Jimmie Ed HUGHES, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 12–02–00285–CR.

Court of Appeals of Texas,
Tyler.

Aug. 13, 2003.

Rehearing Overruled Sept. 26, 2003.

Discretionary Review Refused
Feb. 11, 2004.

---

and two counts of indecency with a child. The jury found Appellant guilty of two counts of sexual assault and two counts of indecency with a child and assessed his punishment at fifteen years of imprisonment and a $10,000.00 fine in each case. In two issues presented, Appellant contends the trial court erred in admitting evidence of extraneous acts of sexual abuse and hearsay statements of the complainant. We reverse and remand for a new trial.

## BACKGROUND

Appellant is the father of the complainant, C.D.H.[1] Appellant and C.D.H. lived in the family home with Appellant's wife, Denise Hughes, who is C.D.H.'s mother, Appellant's two other children, and his nephew. C.D.H. was fifteen years of age when she reported the abuse, her brother was thirteen and her little sister, two.

The chain of circumstances that ultimately led to Appellant's indictment began at the home of Appellant's twin brother, Tim Ed Hughes. Opal is C.D.H.'s first cousin, Tim Ed's daughter. Opal's friend, Evelyn, spent the night of November 8, 2000 with Opal at the Tim Ed Hughes home. According to Evelyn's testimony, Tim Ed Hughes did something sexually inappropriate to her. When Evelyn returned home, she told her mother what Tim Ed had done. One of her mother's friends notified the police. Opal told her mother that her father, Tim Ed, had also molested her. At the request of the sheriff's office, Patricia, Tim Ed's wife, took Opal to the Grapeland police station to be interviewed. Denise Hughes, Appellant's wife, was also there with Opal and Patricia. Before the initial interview with Opal began, Denise went home to get C.D.H. to

Michael Clark Gross, Law Office of Michael C. Gross, San Antonio, for appellant.

Karon K. Connelly, Amarillo, Daphne Session, for appellee.

Panel consisted of WORTHEN, C.J., DeVASTO, J., and BASS, Retired Justice, Twelfth Court of Appeals, TYLER, sitting by assignment.

## OPINION

BILL BASS, Justice (Retired).

Appellant Jimmie Ed Hughes, Jr. was charged with three counts of sexual assault

---

1. We refer to the complainant by her initials.

be with Opal for "moral support" because the two cousins were very close. On the way back to the police station, C.D.H. told her mother that she had also been sexually molested and named Appellant as the perpetrator. When they arrived back at the Grapeland Police Department, C.D.H.'s mother was "visibly shaken ... with her hands cupped over her face ... shaking." She had never suspected any sexual abuse had taken place.

At trial, C.D.H. testified that she and Opal had discussed their mutual history of abuse as well as the possibility of reporting it. C.D.H. was with Opal while Opal was interviewed by Deputy Wellborn of the Houston County Sheriff's Department. Listening to Opal's interview, C.D.H. "broke down," Deputy Wellborn asked her what was the matter, and she told him her father had been sexually abusing her since she was four years old. In response to the deputy's questions, she narrated a history of various kinds of sexual abuse going back as far as she could remember. She told Deputy Wellborn that her father had fondled her breasts on the preceding Tuesday night or early Wednesday morning. C.D.H. was then interviewed by Elaine Baggerly, an investigator for Child Protective Services, to whom she repeated the same history of sexual abuse.

Appellant was described as "in shock" and then angry when he came to the police station. Appellant denied that he had sexually abused his daughter and characterized her as something of a discipline problem. He was heard to say that she must be doing this to him in retaliation for a recent punishment he had given her when she came home drunk from a street dance in Grapeland.

Both Deputy Wellborn and Ms. Baggerly found it strange that Appellant fell asleep on the floor of the police station during the early morning hours while the

investigation was still in progress. Despite Appellant's denial of the allegations, Ms. Baggerly obtained his agreement to leave the home. At trial, Appellant again contended that C.D.H. was a discipline problem and that her accusations were unfounded and made in retaliation for the punishment Appellant had recently administered to her. However, the record does not reflect that the punishments administered by Appellant were unduly severe.

### HEARSAY STATEMENTS

In his second issue presented, Appellant complains that "[t]he trial judge reversibly erred by admitting into evidence the complainant's hearsay statements through an outcry witness." Appellant contends that Deputy Wellborn and Elaine Baggerly should not have been allowed, over his hearsay objection, to repeat for the jury an eleven-year history of sexual abuse told them by the complainant during hours of interrogation. Deputy Wellborn testified as follows:

A. So, anyway, I started visiting with her, and she advised me that she— that her father, Jimmie, had been sexually—

MR. SALLEY: I object. Hearsay.

THE COURT: Overruled.

Q. (By Ms. Conley) You may answer.

A. Had been sexually assaulting her for a number of years and advising me that this abuse had started when she was approximately four years old. In speaking with the child at that time, I asked her what type of abuse she had endured, and she told me that her father had—

MR. SALLEY: Judge, may I have a running objection on hearsay?

THE COURT: I have overruled your objection. If I granted your running objection neither one of us

would know when it started or ended, so, no you may not.

MR. SALLEY: Thank you, Judge.

A. (By the Witness) And she told me that this had been going on since she was four years old. I asked her what type of abuse that, you know, she had been having done to her. She said that her father would—had done everything from coming in and rubbing her on top of her clothing to moving his hand under her clothing to inserting his fingers into her vagina, and he had also performed oral sex on her. She said that the first time she remember her father was standing in the bathroom—and I assume that he was nude at the time because she said that he was trying to get her to put her mouth on his penis and suck it like a straw, and had even taken her hand and put it around it at that time, moving her hand up and down.

Deputy Wellborn also testified that C.D.H. told him her father threatened her.

Q. Did you have any indication that any threats had been made if [C.D.H.] told of what had been happening in her home?

A. Yes, ma'am. [C.D.H.] told us—I asked her—

MR. SALLEY: Object to the hearsay again, Judge.

THE COURT: Yes, sir. Overruled again.

A. I asked her if she had been threatened in anyway. It's very common for somebody to say if you tell on me I'm going to kill you or I'm going to kill your mother or if you say anything you're going to embarrass this family. She said that her daddy had not threatened to kill her but he had threatened to beat her with a belt on this very day here because she was talking to her aunt, and I believe her

name was Trish or—I think it was Patricia but they called her Trish.

Deputy Wellborn also testified without objection, "In my experience I have not had a child make an outcry that it wasn't proved that, you know, it had actually happened."

Elaine Baggerly, the Child Protective Service investigator, was the State's next witness. She had interviewed C.D.H. just after Deputy Wellborn. She testified, without objection, that she found C.D.H. "very believable," that "she appeared very honest" and that she had "a very strong feeling that C.D.H. was telling the truth." When the prosecutor asked Baggerly the types of sexual abuse that C.D.H. had related to her, Appellant objected on hearsay grounds. The prosecutor argued that Baggerly's testimony regarding what the complainant had told her about her history of sexual abuse was offered as an excited utterance under Texas Rule of Evidence 803(2). The trial court found the evidence admissible because the complainant was still in the grip of the emotional excitement provoked by hearing Opal tell Deputy Wellborn about the abuse she had endured. Ms. Baggerly then testified, in pertinent part, as follows:

Q. In her description to you of what had occurred to her during her childhood, what type of things did she tell you?

A. That her father penetrated her vagina with his hands, with his fingers. That he penetrated her vagina with his tongue. She described it as performing oral sex and sticking his tongue inside of her. He fondled her breasts. That he took her hand and placed her hand on his penis moving her hand up and down in a masterbation [sic]-type movement.

Q. And do you recall whether there were similar type situations throughout the years or was that an isolated type of situation?

A. My understanding was that these type of acts occurred on several different occasions. It was not a single event, but these were the kinds of things that he did.

Q. Okay. That these things were repeated a lot?

A. Yes.

The State maintains that the testimony of both Deputy Wellborn and Ms. Baggerly was admissible as an excited utterance. Rule 803(2) states, as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(2) Excited Utterance. A statement describing an event or condition made while the declarant was under the stress of excitement caused by the event or condition.

TEX.R. EVID. 803(2).

### Standard of Review

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *See Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex. Crim.App.1990). If the trial court's ruling on the admission of evidence is correct under any theory of law, the trial court's decision should not be disturbed even if the trial court gives the wrong reason for its ruling. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

### Applicable Law

The excited utterance exception to the hearsay rule is based upon the belief that excitement stills the capacity for reflection so that utterances made by a declarant while excited by a startling event are free from conscious fabrication. 2 GOODE, WELLBORN & SHARLOT, TEXAS PRACTICE: TEXAS RULES OF EVIDENCE: CIVIL & CRIMINAL § 803.3 (3d ed.2002). The exception has three requirements:

(1) the statement must be the product of a startling occurrence that produces a state of nervous excitement in the declarant and renders the utterance spontaneous and unreflecting,

(2) the state of excitement must still so dominate the declarant's mind that there is no time or opportunity to contrive or misrepresent, and

(3) the statement must relate to the circumstances of the occurrence preceding it.

*Sellers v. State,* 588 S.W.2d 915, 918 (Tex. Crim.App. [Panel Op.] 1979). The court of criminal appeals has more recently explained:

It is not dispositive that the statement is an answer to a question or that it was separated by a period of time from the startling event; these are simply factors to consider in determining whether the statement is admissible under the excited utterance hearsay exception. The critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event" or condition at the time of the statement.

*Salazar,* 38 S.W.3d at 154 (citations omitted) (quoting *McFarland v. State,* 845 S.W.2d 824, 846 (Tex.Crim.App.1992)). The inquiry should focus on whether the cumulative effect of the three *Sellers* requisites shows the statement to be sufficiently reliable. *Sellers,* 588 S.W.2d at 918.

The startling event that triggers the excited utterance need not be the crime itself. *See Hunt v. State,* 904

S.W.2d 813, 815 (Tex.App.-Fort Worth 1995, pet. ref'd). In *Hunt*, an eleven-year-old girl began to cry uncontrollably upon seeing a television news item about a young rape victim who had been stabbed by her attacker. When her mother asked her why she was crying, she told her mother that her father's friend had sexually assaulted her three months before. *Id.* At trial, the girl testified that seeing the news program made her afraid that she might be pregnant. *Id.* Over the defendant's objection, her mother was also permitted to testify to what her daughter had said. *Id.* The court held that the shock of seeing the television news program, coupled with her fear of pregnancy, was sufficient to produce a state of nervous excitement so as to render her subsequent remarks spontaneous. *Id.* at 816–17.

### Application of Law to Facts

 The interviews at the Grapeland police station lasted, according to the record, an estimated four to six hours. The questioning of Opal and C.D.H. by Deputy Wellborn and Ms. Baggerly consumed much of that time. That some of a declarant's statements were in response to questions does not necessarily make them inadmissible under this exception to the hearsay rule. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App.1992). But it is an important factor in determining the spontaneity of the statement. Both Deputy Wellborn and Ms. Baggerly asked C.D.H. questions calculated to elicit information about past events and activities. "Responses to this type of questioning are normally considered reflective narratives of past events" and hence lacking the spontaneity required to be admissible under this exception. *See Glover v. State*, 102 S.W.3d 754, 765 (Tex.App.-Texarkana 2002, pet. ref'd); *see also Rubenstein v.*

*State*, 407 S.W.2d 793, 795 (Tex.Crim.App. 1966).

There is no question that C.D.H. became distraught when she heard Opal tell about how she was abused by her father. And it is natural that she would be in a tearful and agitated state while engaged over nearly a two-hour period in something so painful as twice retelling an eleven-year history of sexual abuse by her own father. Nevertheless, the rule requires a determination (1) whether C.D.H.'s presence with Opal and Deputy Wellborn at Opal's interview was an occurrence startling enough to produce a state of nervous excitement which would render her statements made during two lengthy interrogations "spontaneous and unreflecting" and, if so, (2) whether the startling event continued to dominate the reflective powers of her mind during that period. Several circumstances argue against it here.

C.D.H. was brought to the Grapeland Police Department to lend moral support for her younger cousin Opal while she talked to the investigators. Opal and C.D.H. had recently discussed their shared history as victims of sexual abuse. C.D.H. had assured Opal that if she had to turn her father in, she would not be left to suffer alone. She knew why she was going to be with Opal, and she knew what she was going to hear. It was undoubtedly stressful but should not have been startling or surprising. The two interviews were conducted in tandem. The length of the interviews is itself a circumstance arguing against unreflecting spontaneity. The record indicates that both girls remained in the room throughout the interviews by both Deputy Wellborn and Ms. Baggerly. The investigators, in their testimony, did not recount unreflecting statements made by the complainant. Instead, they summarized what they described as a

very detailed narrative that emerged over a protracted interrogation.

The State also suggests that C.D.H.'s reflective powers were dominated by the emotions triggered when her father fondled her breast some three days before. But the record shows that although she mentioned the incident, she apparently did not dwell on it and Deputy Wellborn made no written note of it. She did relate incidents of a much more disgusting nature which she said had occurred as often as three times a week throughout her childhood. It seems unlikely that she was still gripped by the emotion triggered by the incident three days before.

Several factors distinguish this case from *Hunt.* In *Hunt,* the child told of one assault, not an eleven-year pattern of abuse. In *Hunt,* the outcry came suddenly during or immediately following the television news story about the young rape victim who had been stabbed. In the instant case, C.D.H. was forewarned about the purpose of the police interviews with Opal, and she had discussed the situation with Opal. The facts in this case emerged during two extended interviews. The complainant in *Hunt* was only eleven years of age. C.D.H. was fifteen and probably more able and likely to reflect before answering.

▇ Responding to the investigator's questions, C.D.H. narrated a painful personal history. But narrations, especially of this length, are inherently reflective, not spontaneous. As its name strongly suggests, the exception for excited utterances or spontaneous declarations was not developed to allow the introduction into evidence of extended narratives by crime victims, and certainly not summaries of those narratives as in the instant case. The extra-legal considerations supporting a broadening of the exception are especially compelling in cases involving the sexual abuse of children. The victim is frequently emotionally overwrought in reporting the crime, and the crime is universally regarded as monstrous. These considerations doubtless played a role in the legislature's creation of Texas Code of Criminal Procedure Article 38.072, a special hearsay exception in the prosecution of sexual crimes against children twelve years of age or younger. But admissibility is conditioned upon the satisfaction of several requirements intended to reduce the dangers inherent in hearsay testimony. To be admissible, the statement must be by the child victim made to the first person over eighteen years of age, other than the defendant, to whom the child made a statement about the offense. But it is admissible only if the prosecutor gives fourteen days notice of intent to use the statement, and provides the defendant with the name of the witness and a summary of the statement. Even then, the trial court must conduct a hearing outside the presence of the jury to determine the statement's reliability before the statement is admitted. The rule provides for only one outcry witness. Before more than one outcry witness may testify, the outcry must be about different events, and not simply the repetition of the same event as related by the victim to different individuals. *Broderick v. State,* 35 S.W.3d 67, 73 (Tex.App.-Texarkana 2000, pet. ref'd). In the instant case, the State named two outcry witnesses, but otherwise failed to comply with Article 38.072. Consequently, the trial judge indicated he would exclude outcry testimony.

In this case, it is impossible to conclude that C.D.H.'s statements were made without opportunity for reflection or deliberation. We decline to further expand the excited utterance exception to include a summary distilled from a protracted interrogation. The court of appeals in *Glover* observed "[t]he danger of allowing expan-

sion of the excited utterance exception to include this type of information is that it will become as broad and indeterminate as the former *res gestae* exception." *Glover*, 102 S.W.3d at 765. We conclude that, measured against the *Sellers* criteria, the statements in question were not admissible under Rule 803(2), and the trial court erred in admitting them.

### HARM ANALYSIS

 Improper admission of hearsay evidence is nonconstitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Therefore, if the error did not affect Appellant's substantial rights, it must be disregarded. *See* TEX. R.APP. P. 44.2. A substantial right is affected if the error had a substantial or injurious effect on the jury's verdict. *See Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim.App.2000). The reviewing court must consider the entire record, the nature of the evidence supporting the verdict, the character of the alleged error, and how the alleged error might be considered in connection with other evidence in the case. *Id.*

Both Deputy Wellborn and Ms. Baggerly were allowed to summarize for the jury what the complainant had told them: that at one time or another, Appellant had penetrated her vagina with his hands, fingers, and tongue, and that when she was four, he had asked her to suck his penis like a straw. They told the jury that the abuse had occurred two or three times a week since C.D.H. could remember. Both Deputy Wellborn and Ms. Baggerly told the jury that they were impressed by C.D.H.'s very detailed descriptions of the disgusting things her father had done to her.

We were fortunate enough to hear Officer Robert Wellborn. He was a deputy with the Houston County Sheriff's Office. I thought he was very direct and clear about his assessments at that time when he interviewed [C.D.H.]. [C.D.H.] told him very definite—as he said, very very credible, and he gave you any number of reasons why he found her credible. He explained to you about the training he had had as a law enforcement officer, and specifically in investigations of sexual abuse. One of the things he said was that [C.D.H.] was very upset. This wasn't a rehearsal deal. There was a lot of mental anguish going on and it was very difficult for her to share the most intimate things that any us can ever imagine. By her detail and her consistency and her unwavering he became convinced that she was telling the truth, and he was pretty strong about that while he was on the stand.

He was concerned about the fact that she had been threatened in that [C.D.H.] has related that her dad said he would beat her. Deputy Wellborn mentioned that to you, that it was a concern of his, too.

. . . .

Ms. Baggerly was very, very direct in her questioning and her questioning on cross-examination. Her words were, I believed [C.D.H.] . . . But in her opinion, she believed [C.D.H.]. [C.D.H.] was forthright. She was cooperative. She gave her the information she asked for and she articulated that as well as she could.

 A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Johnson*, 967 S.W.2d at 417. We have no such assurance in this case. The State was prohibited from introducing the testimony of an outcry witness for failure to comply with Texas Code of Criminal Procedure Article 38.072. Had the State complied with Article

**256**

38.072, it could not have introduced the testimony of two outcry witnesses unless the witnesses testified about different events. Nevertheless, by the trial court's error, the State avoided compliance with the requirements of Article 38.072 and introduced the testimony of not one, but two, witnesses who, over defense counsel's objection, described in detail the same events C.D.H. related in protracted interviews. Moreover, the State strongly emphasized Deputy Wellborn's and Ms. Baggerly's testimony in closing argument. The prosecutor especially dwelt upon their conclusions about C.D.H.'s credibility and how impressed they were with the detail C.D.H. provided about her life of sexual abuse.

Our examination of the record as a whole leads us to the conclusion that the admission of the hearsay evidence probably had an injurious influence on the jury's deliberations and thereby affected a substantial right of the Appellant. We sustain Appellant's first issue. Because of our disposition of this issue, we do not address Appellant's remaining issue. TEX.R.APP. 47.1.

We *reverse* the judgment and *remand* the cause to the trial court for a new trial.