Appellant=s Motion for Rehearing Overruled; Affirmed; Majority and
Concurring Opinions of July 13, 2004 Withdrawn; and Substitute Majority and
Concurring Opinions filed December 9, 2004









Appellant=s
Motion for Rehearing Overruled; Affirmed; Majority and Concurring Opinions of
July 13, 2004 Withdrawn; and Substitute Majority and Concurring Opinions filed
December 9, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01089-CR

____________

 

JOHN BRUCEWAYNE OVEAL, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

____________________________________________________________________

 

On Appeal from the 339th District Court

Harris
County, Texas

Trial Court Cause No. 922,010

____________________________________________________________________

 

S U B S T I T U T E   C O N C U R R I N G   O P I N I O N

 

I
respectfully concur.  

                                     Excited
Utterance Exception to Hearsay Rule








Today
the court tests the limits of the excited-utterance exception to the hearsay
rule in deciding whether a Anot excited@ complainant=s statements, made during a post-assault police interview and
after she already had given an account of the same event to another witness,
can fairly be characterized as excited utterances within the meaning of Texas
Rule of Evidence 803(2).  The majority
concludes that the statements in question, admitted through Officer Charles
Webb=s testimony, qualify under this
hearsay exception.  Because the record
supports the opposite conclusion, I respectfully decline to join the majority=s analysis of appellant=s second issue.  However, because the trial court=s admission of this hearsay evidence
was harmless error, the judgment nonetheless should be affirmed.  Therefore, I respectfully concur in the court=s judgment. 








An excited utterance is a statement that relates
to a startling event or condition and that is made while the declarant is under
the stress of excitement caused by the event or condition.  Tex. R.
Evid. 803(2).  The basis for the
excited-utterance exception to the hearsay exclusionary rule is Aa
psychological one, namely, . . . that when [one] is in the instant grip of
violent emotion, excitement or pain, he ordinarily loses the capacity for
reflection necessary to the fabrication of a falsehood and the >truth
will come out.=@  Zuliani v. State, 97 S.W.3d 589, 595
(Tex. Crim. App. 2003) (quoting Evans v. State, 480 S.W.2d 387, 389
(Tex. Crim. App. 1972)).  In the words of the Court of Criminal
Appeals, Athe statement is trustworthy because
it represents an event speaking through the person rather than the person
speaking about the event.@  Id.  The hallmark of an excited utterance is
spontaneity, a quality that is produced from a momentary impulse.  A spontaneous utterance is one that springs
forth naturally, without deliberation. 
It is the product of reactive rather than reflective thinking.  Thus, an important consideration in
evaluating testimony under the excited-utterance exception is whether the
declarant had the ability to reflect and fabricate.  See Drayton v. State, 135 S.W.2d 703,
704 (Tex. Crim. App. 1940) (op. on reh=g); Hughes v. State, 128 S.W.3d
247, 253B54 (Tex. App.CTyler 2003, pet. ref=d). 
The underlying rationale for this principle is that a statement made
contemporaneously with, or shortly after, a startling event provides a higher
degree of reliability.  By the same
logic, a statement made in response to an inquiry (i.e., one that requires
reflection) or a statement made some time after the event (i.e., one made after
opportunity for reflection), provides a comparatively lower degree of
reliability.  The passage of time is
highly relevant, but not dispositive, in determining whether a statement falls
within the excited-utterance exception.  

The
Court of Criminal Appeals set the presumed outer boundaries of the
excited-utterance exception to the hearsay rule in Zuliani, a case in
which it found that a statement made twenty hours after an altercation, in
response to a question, and after the declarant appeared to be thinking about
her answer, was nonetheless an excited utterance.  In its analysis, the Zuliani court
noted that the declarant was Awithdrawn, with her head down >like a two-year old,= scared to death, or >real scared,= and tired.@ 
See Zuliani, 97 S.W.3d at 596.  Although the interval between the startling event and the
statements was lengthy and some of the declarant=s statements were made in response to
questions, the Zuliani court found the statements still fell within the
excited-utterance exception.  See id.
at 595B96. 
In reaching its conclusion, the court noted that the declarant, who was Ascared to death,@ had not received medical treatment
for her injuries (a lacerated scalp that required stitches) and had not been
separated from the defendant since the incident occurred.  See id. at 596.  These factors appear to be central to the
court=s holding
because they impacted the declarant=s ability
to reflect and to fashion a response.  See id.
(quotation omitted).  The facts
presented by our record are different in significant respects.  








When
Officer Webb arrived at the apartment, Landers=s attacker already had left the
scene; the attacker did not remain with Landers after the incident.  Moreover, in the two- to three-hour period
between the time the attacker fled and the time the police arrived, Landers
talked to her aunt, Theresa Griffin, about the afternoon=s events.[1]  By the time Webb arrived, Landers was not
excited. She was not crying and did not need to be calmed down. She gave her
statements in the context of a police interview, answering questions the
officer propounded.








In
evaluating whether a statement qualifies as an excited utterance, the critical
determination is Awhether the declarant was still dominated by the emotions,
excitement, fear, or pain of the event or condition at the time of the
statement.@ 
Zuliani, 97 S.W.3d at 596. 
It is not enough to merely experience stress or feel afraid; the
declarant=s emotions must be so forceful that
they dominate her mind so as to render her incapable of reflective
thought.  See id.  An evidentiary basis exists to support a
finding that, at the time Landers answered Webb=s interview questions, Landers was
afraid, and perhaps upset.  However, the
record does not indicate Landers was dominated by those emotions or that she was
in Athe
instant grip of violent emotion, excitement or pain.@  See id. at 595.  Nor does the record indicate Landers=s statements were made at a time so
near the startling event as to preclude any possibility of deliberate design or
fabrication in her responses to Webb=s inquiries.  Tellingly, Landers=s statements to Webb were not her
first account of the startling event.  See
Drayton, 135 S.W.2d at 704; Hughes, 128 S.W.3d at 252B53. 
Given that she already had recounted the same event to her aunt, Landers=s statements to Webb could hardly be
characterized as spontaneous.  Likewise,
though Landers appeared to be Asomewhat@ under stress, there is no evidence to suggest she was
incapable of reflection or fabrication or that she was speaking without
deliberation during the interview.  In
fact, when she spoke, she was responding to interview questions, not making
spontaneous utterances.  The questions C not the startling event C triggered her statements.  It is not reasonable to conclude that Landers=s statements to Webb, in effect, were
Athe event speaking through@ Landers, and not Landers talking
about the event.  See Zuliani, 97
S.W.3d at 595. 

Landers=s statements in response to Webb=s questions lack the requisite
indicia of reliability to be admissible under the excited-utterance exception
to the hearsay rule.  See Hughes,
128 S.W.3d at 252B53. On this record, the trial court erred in determining that
the State satisfied its burden of showing that Landers=s statements to Webb were excited
utterances.  See Martinez v.
State, 993 S.W.2d 751, 758 (Tex. Crim. App. 1999) (stating that if State is
offering the evidence, then it has the burden of establishing that the
proffered hearsay is admissible under an exception to the hearsay rule); Drayton,
135 S.W.2d at 704 (holding that it is error to admit statement as excited
utterance when statement lacked requisite degree of spontaneity and when
declarant had previously related the events in question to other parties); Hughes,
128 S.W.3d at 252B53
(holding that trial court erred in admitting statements as excited utterances
because the statements were narrations in response to police interrogation and
it was not possible to conclude that the statements were made without
opportunity for reflection or deliberation).  Because the
statements were not excited utterances, the trial court should have sustained
the defense=s hearsay objections.

The improper admission of Webb=s testimony concerning Landers=s statements is governed by the harm
analysis applicable to non-constitutional error.  See Tex.
R. App. P. 44.2(b).  Thus, the
judgment should be overturned if, after examining the record as a whole, the
reviewing court has Agrave doubt@ that the error did not affect the outcome.  Webb v. State, 36 S.W.3d 164, 182 (Tex.
App.CHouston [14th Dist.] 2000, pet. ref=d) (en banc).  If the error had no influence or only a
slight influence on the verdict, it is harmless.  Id. 
If the reviewing court is unsure whether the error affected the
outcome, the court should treat the error as harmful, i.e., as having a
substantial and injurious effect or influence in determining the jury=s verdict.  Id.








Although
Landers did not testify at trial, two witnesses other than Webb gave admissible
testimony implicating appellant in the assault. 
Landers=s young cousin, Anikka Gray,
testified that upon returning home from school, she saw appellant leave the
apartment through an open bedroom window and run down the stairs.  According to the youngster=s testimony, before either Griffin or
Webb arrived, appellant returned to the scene, and Gray saw him strike
Landers.  Likewise, Griffin
testified that while she was still at work and speaking to Landers on the
telephone, she could hear what was happening at the apartment.  Griffin, who left her workplace to go to
Landers=s aid,
also testified as to Landers=s
at-the-scene account of what transpired with appellant at the apartment.[2]  Because Webb=s
testimony was cumulative of Griffin=s
testimony, and because there was also eyewitness testimony from Gray that
implicated appellant in the assault on Landers, a reasonable evaluation of the
record gives fair assurance that the error did not influence the jury=s verdict
or had but a slight effect on the outcome. 
See Liggens v. State, 50 S.W.3d 657, 662 (Tex. App.CFort
Worth 2001, pet. ref=d)
(holding that, even if admission of testimony as excited utterance were error,
it would not be reversible error because testimony was cumulative of other
evidence).  Therefore, the erroneous
admission of Landers=s hearsay
statements through Webb was not harmful. 
For this reason, this court is correct to overrule appellant=s second
issue.

                                             Exclusion
of Handwritten Statement








The majority finds appellant failed to preserve
his complaint that the trial court erred in refusing to admit Landers=s
handwritten statement as impeachment evidence. 
This complaint was sufficient to preserve error.  The majority errs in concluding that appellant=s offer of the handwritten document
as Aimpeachment@ was not specific enough to make the
trial court aware of appellant=s theory of admissibility. 
The trial court, however, correctly excluded this evidence because appellant
did not limit his offer to the portions of the statement that impeached Landers=s credibility.  The document included a statement that
Landers=s aunt, Griffin, did not like appellant
and would believe that he perpetrated this offense.  This statement was not impeachment evidence.  Because appellant offered the entire
statement, which contains both statements that were admissible for that purpose
and statements that were not admissible for that purpose, the trial court did
not abuse its discretion in refusing to admit the document.  See Willover v. State, 70
S.W.3d 841, 846B47 (Tex.
Crim. App. 2002).

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and
Substitute Majority and Concurring Opinions filed December 9, 2004. 

 

Panel consists of Justices Edelman, Frost, and Seymore.  (Seymore, J., majority.)

Publish C Tex. R. App. P. 47.2(b).

 

 











[1]  After the
trial court initially sustained appellant=s
hearsay objection, the prosecutor attempted to lay a better predicate.  The trial court later overruled the
objection, but then in response to defense counsel=s repeated renewals of the hearsay objection, the
trial court allowed defense counsel to take Webb on voir dire. When defense
counsel again renewed the hearsay objection, stating that the declarant was not
under the stress of the exciting situation at the time the statements were
made, the trial court stated:

 

Counsel, I’=m not
sure at what point he’=s still talking to her.  And if you both want to clarify that, it’=s part of the excited utterance.  Why don’=t you
both approach and let me talk to you for just a second. 

After the bench conference, the trial court informed
the lawyers that it would permit both of them to conduct further questioning to
find out if the testimony fell within the exception. When defense counsel
questioned Webb again, Webb admitted that during his investigation, Landers
told him that she already had talked to Griffin.  The court ultimately overruled the hearsay
objection and permitted Webb to testify about what Landers said in the
interview.





[2]  Unlike Webb’s
account, Griffin=s statements about what Landers said immediately
following the incident were admissible as excited utterances.  At the time Landers spoke to Griffin, she was
visibly upset and crying.  Though an hour
had passed, the record shows Landers was still dominated by the excitement,
pain, and stress of the assault.  Her
statements to Griffin were spontaneous, and measured against the applicable
factors, qualified as excited utterances under Rule 803(2).  See Zuliani, 97 S.W.3d at 595B96.