MARY'S OPINION HEADING 









                                                NO.
12-05-00038-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER,
TEXAS

JIMMIE ED HUGHES, JR.,            §                      APPEAL
FROM THE 349TH

APPELLANT

 

V.        §                      JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §                      HOUSTON
COUNTY, TEXAS

                                                                                               
                                                              

OPINION

            A jury convicted Appellant of one count of sexual assault
and two counts of indecency with a child. 
The jury assessed Appellant’s punishment at imprisonment for six years
on the sexual assault count and imprisonment for two years, probated for ten
years, on each of the two counts of indecency with a child.  In his first issue, Appellant contends the
evidence supporting his sexual assault conviction is legally insufficient.  In his second issue, Appellant challenges the
authority of the trial court to require, as a condition of probation, that he
give public notice of his sex offender status by publishing it in a newspaper
where he lives every three months and by placing a sign at his front door
stating that he is a convicted sex offender. 
We affirm.

 

Background








            C.H. is the complainant, and Appellant is her
father.  C.H. was fifteen years of age
when she reported her father’s sexually abusive conduct.  At trial she related a history of sexual
abuse extending back to when she was four years old.  Appellant denied his daughter’s accusations
of sexual abuse.  The case had been
previously tried, but this court reversed Appellant’s conviction and remanded
the cause to the trial court.  The
opinion in the first appeal of this case contains a complete statement of the
facts.  See Hughes v. State,
128 S.W.3d 247 (Tex. App.–Tyler 2003, pet. ref’d).

 

Legally Insufficient Evidence

            In his first issue, Appellant maintains there is no proof
or legally insufficient proof of the complainant’s lack of consent, a statutory
element of the offense of sexual assault. 
Although C.H. was no more than fifteen years of age at the time of the
offense, the State charged Appellant under Section 22.011(a)(1) of the Texas
Penal Code rather than Section 22.011(a)(2), sexual assault of a child, which
requires no proof of consent.  Compare
Tex. Pen. Code Ann. §
22.011(a)(1) (Vernon Supp. 2005) with Tex.
Pen. Code Ann. § 22.011(a)(2) (Vernon Supp. 2005).

            Appellant was charged with the sexual assault of C.H. in
count three of the indictment, which alleges the following:

 

And
the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in
and on to said Court that on or about the 15th of October, 2000, A.D., in said
County and State, and anterior to the presentment of their indictment, Jimmie
Ed Hughes, Jr., did then and there, intentionally or knowingly cause the
penetration of the female sexual organ of C.H. by Defendant’s finger, without
the consent of C.H.

 

 

See id.
§ 22.011(a)(1)(A).  

            Likewise, the application paragraph of the court’s charge
provides as follows:

 

Now,
if you find from the evidence beyond a reasonable doubt that on or about the
15th day of October, 2000, in Houston County, Texas, the defendant, Jimmie Ed
Hughes, Jr., did then and there intentionally or knowingly cause the
penetration of the female sexual organ of C.H. by defendant’s finger, without
the consent of C.H., then you will find the defendant guilty of Count Three–
Sexual Assault, as charged in the indictment.

 

 

Standard of Review

            The standard of review of legal sufficiency of the
evidence is whether, viewing the evidence in the light most favorable to the
jury’s verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S.
307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Whitaker v.
State, 977 S.W.2d 595, 598 (Tex. Crim. App. 1998).  The Jackson standard measures
evidentiary sufficiency against the “substantive elements of the criminal
offense as defined by state law.”  Jackson,
443 U.S. at 324 n.16, 99 S.Ct. 2792 n.16; Fuller v. State, 73
S.W.3d 250, 252 (Tex. Crim. App. 2002).

Analysis

            Lack of consent is a statutory element of sexual assault
as charged in count three of the indictment. 
Tex. Pen. Code Ann. §
22.011(a)(1). The statute enumerates when conduct is committed without the
consent of the other person, stating as follows:

 

(1)
the actor compels the other person to submit or participate by the use of
physical force or violence;

 

(2)
the actor compels the other person to submit or participate by threatening to
use force or violence against the other person, and the other person believes
that the actor has the present ability to execute the threat;

 

(3)
the other person has not consented and the actor knows the other person is
unconscious or physically unable to resist;

 

(4)
the actor knows that as a result of mental disease or defect the other person
is at the time of the sexual assault incapable either of appraising the nature
of the act or resisting it;

 

(5)
the other person has not consented and the actor knows the other person is
unaware that the sexual assault is occurring;

 

(6)
the actor has intentionally impaired the other person’s power to appraise or
control the other person’s conduct by administering any substance without the
other person’s knowledge;

 

(7)
the actor compels the other person to submit or participate by threatening to
use force or violence against any person, and the other person believes that
the actor has the ability to execute the threat;

 

(8)
the actor is a public servant who coerces the other person to submit or
participate;

 

(9)
the actor is a mental health services provider or a health care services
provider who causes the other person, who is a patient or former patient of the
actor, to submit or participate by exploiting the other person’s emotional
dependency on the actor;

 

(10)
the actor is a clergyman who causes the other person to submit or participate
by exploiting the other person’s emotional dependency on the clergyman in the
clergyman’s professional character as spiritual adviser; or

 

(11)
the actor is an employee of a facility where the other person is a resident,
unless the employee and resident are formally or informally married to each
other under Chapter 2, Family Code.

 

 

Tex.
Pen. Code Ann. § 22.011(b)(1-11) (Vernon Supp. 2005).

            C.H. testified that her father began molesting and
assaulting her when she was three or four years old, “[a]nd I would be so
scared and wanted to just hide.”

 

[C.H.]     A.            I would lay there trying to go to
sleep, but it was constant thought of when is my door going to open, or when is
someone going to come in.  And so I tried
to stay awake as long as possible so maybe whenever he would come in, I could
make some kind of noise and wake up my mom. 
And then he would leave.

 

                                . . . .

 

[STATE] Q.           So he would take your hand and put it on this [sic] erect
penis?

 

A.            Yes,
ma’am.

 

Q.            For
you – and guide you to masturbate him?

 

A.            Yes,
ma’am.

 

Q.            How
often did that happen?  Was that something
that happened regularly?

 

A.            It
was regularly.  I used to try to snatch
my hand back.  And he would – 

 

Q.            Would
he ever rub him – rub his body against you when he was sexually aroused like
that?

 

A.            Yes,
ma’am.

 

Q.            Would
your father say anything to you when he was doing these things to you?

 

A.            Whenever
I would get upset, whenever I would get upset, he would sit there and tell me
to relax and that it was okay because I was his pretty little girl, that I
loved my – (Witness crying.)  I’m sorry.

 

 

            In regard to the October 2000 sexual assault alleged in
count three, C.H. testified, as follows:

 

Q.            And
will you describe what happened at that time?

 

A.            I
woke up to my father taking off my clothes in the middle of the night.  And – 

 

Q.            Where
was this?

 

A.            I
was in my bedroom.

 

Q.            Okay.  And this is at the same house that you told
us about earlier that’s – that was in Grapeland in Houston County?

 

A.            Yes,
ma’am.

 

Q.            And
what – what happened?

 

A.            He
started taking off my clothes, and I woke up to it.  And he was feeling on my chest, then he was
feeling on my genitals.  And he was
kissing on me.  And – 

 

THE COURT: Would
you like to take a short break?

 

THE WITNESS:
Yes, please, if you don’t mind.

 

            After a recess for lunch, C.H.
continued her testimony.

 

Q.            [You
were] beginning to share with us what happened in October of 2000.  So – 

 

A.            Yes,
ma’am.   I remember waking up to my
father touching me and talking [sic] off my clothes.  And I’m not sure what time it was.  It was pretty late.  He had been – he had taken off most of my
clothes and was touching all over me and kissing on me and feeling my chest, my
vagina area.

 

 

            Her testimony concerning the indecency with a child
charge alleged in count five of the indictment also demonstrates that Appellant
often began to sexually assault C.H. while she slept.

 

Q.            What
happened when you woke up and you saw him beside you or – or kneeling over you
and you could feel him touching you?

 

A.            I
tried to ignore it and make it seem like it actually wasn’t there.  (Witness crying.)  Sorry. 
I woke up to my father feeling over my clothes at first.  Then he lifted up my shirt, and he was
feeling my chest.  Then he started to do
more.  And whenever he went to take off
my pants, I think he noticed that I had on a pad because I was on my
period.  So therefore, he stopped.  He was just rubbing my chest and my stomach
and my legs, and then he just left me alone.

 

Q.            When
you say your chest or do you mean your breasts?

 

A.            Yes,
ma’am.

 

Q.            And
he was touching your breasts under your clothes?

 

A.            Yes,
ma’am.

 

Q.            Did
– was this something that was consensual?

 

A.            It
happened on a regular basis.  I – I didn’t
– I didn’t consent to it.  But I just
tried to act like it wasn’t happening.

 

 

            From C.H.’s earliest recollection until she was fifteen,
Appellant, who should have been her guardian and protector, taught her to
satisfy his sexual whims, no matter how disgusting.  And yet she managed to show her revulsion and
aversion, her lack of consent, in a number of ways.  She testified that in order to avoid his
advances (1) she would keep her little sister in bed with her; (2) she would
undress in the bathroom with the door locked to keep Appellant from seeing her
undress; (3) she tried to stay with friends and grandparents; (4) she would wear
clothing in bed that was hard to remove; (5) she would try to snatch her hand
away when she masturbated Appellant; (6) she would become upset and cry; and
(7) she would avoid having to wake up Appellant so she would not be grabbed.  On several occasions, Appellant began to
sexually abuse or assault C.H. while she was asleep.  One can infer from this that Appellant knew
C.H. did not consent to his advances. 
The evidence shows that Appellant commenced the assault charged in count
three while C.H. slept.  When she awoke,
Appellant had removed most of her clothes and was feeling her chest and vaginal
area.  From this testimony, the jury
could reasonably infer that the assault was completed before C.H. was conscious
or physically able to resist.  The
evidence is legally sufficient to show the October sexual assault was without
C.H.’s consent.  Appellant’s first issue
is overruled.

 

Notice of Sexual Offender Status

            In his second issue, Appellant contends that the trial
court had no authority to require as a condition of Appellant’s probation that
Appellant publish notice of his sex offender status in the newspaper every
three months and place a sign on his front door stating that he is a convicted
sex offender.  Appellant argues that
Article 62.045 of the Texas Code of Criminal Procedure provides specific
exclusive and mandatory direction on how the public is to be notified when sex
offenders reside in their neighborhoods. 
See Act of June 19, 1999, 76th Leg., R.S., ch. 1557, 1999 Tex.
Gen. Laws 5354, 5357-58 (current version at Tex.
Code Crim. Proc. Ann. art. 62.056 (Vernon Pamph. Supp. 2005)).  Article 42.12 of the Code provides that the
defendant, as a condition of probation, shall give notice of the offense for
which he was placed on probation “in any manner required by the judge.”  Tex.
Code Crim. Proc. Ann. art. 42.12 § 11(a)(23) (Vernon Pamph. Supp.
2005).  Appellant maintains that the
specific provisions of Article 62.045 preempt the general provision for public
notice contained in Article 42.12, Section11(a)(23).

            Article 62.03(c) of the Texas Code of Criminal Procedure
provides that the trial court shall assess the risk level of a sex offender
placed on probation and assign the offender a risk level of one (low), two
(moderate), three (high) using a screening method developed by a risk
assessment review committee established by the Department of Public
Safety.  Act of June 19, 1999, 76th Leg.,
R.S., ch. 1557, 1999 Tex. Gen. Laws 5354, 5355 (current version at Tex. Code Crim. Proc. Ann. art. 62.053
(Vernon Pamph. Supp. 2005)).  Using the
screening tool developed by the risk assessment committee, Appellant was
assigned a risk level of one (low) indicating that he poses a low danger to the
community and will not likely engage in criminal sexual conduct.  See Act of May 18, 2001, 77th Leg.,
R.S., ch. 177, 2001 Tex. Gen. Laws 357, repealed by Act of June 18,
2005, 79th Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws 3385, 3397-98.   Article 62.031(b) prohibits publication of
the person’s sex offender status by a law enforcement agency if the offender is
assigned a risk level of one.  Act of
June 18, 2003, 78th Leg., R.S., ch. 347, 2003 Tex. Gen. Laws 1509, repealed
by Act of June 18, 2005, 79th Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws
3385, 3397.  The trial court may override
the risk level assigned only if it (1) believes the assessed risk level is not
an accurate prediction of the risk the offender poses to the community and (2)
documents the reason for the override in the offender’s case file.   Act of May 18, 2001, 77th Leg., R.S., ch.
177, 2001 Tex. Gen. Laws 358, repealed by Act of June 18, 2005, 79th
Leg., R.S., ch. 1008, 2005 Tex. Gen. Laws 3385, 3397-98.  The trial court in the instant case made no
findings documenting her reason for overriding Appellant’s risk level.

            The State contends that Appellant failed to preserve
error by not objecting in the trial court to the conditions of probation he now
challenges on appeal.  See Tex. R. App. P. 33.1.  In Mendez v. State, 138 S.W.3d
334, 342 (Tex. Crim. App. 2004), the court stated, “Except for complaints
involving systemic (or absolute) requirements, or rights that are waivable
only, which are not involved here, all other complaints, whether
constitutional, statutory, or otherwise, are forfeited by failure to comply
with Rule 33.1(a).”  The court of
criminal appeals in Marin v. State, 851 S.W.2d 275, 278-79 (Tex.
Crim. App. 1993) identified three classes of “rights,” each with distinct
requirements for preservation of an appellant’s complaint of their denial.  A systemic or absolute requirement is a law
that the trial court has a duty to follow even if the parties wish
otherwise.  Id. at
279.  A party may complain on appeal that
such a requirement was violated, even if the party failed to complain in the
trial court.  Id.  A second category is the “waivable right” or
a right that must be implemented unless expressly waived.  Id.  The third class is the “forfeitable right”;
in this class are rights of litigants that are to be implemented on
request.  Id.  Most litigants’ rights fall into the latter
category and are forfeited by a failure to exercise them.  Id. at 278.  The preservation of this kind of complaint
requires a timely specific objection and a ruling by the trial court.  Id. at 279; Tex. R. App. P. 33.1(a).  Noncompliance with Rule 33.1(a) results in
forfeiture.  The State contends, and we
agree, that the “right” urged by Appellant in this case is included in the
latter category.  

            The appellant in Speth v. State, 965 S.W.2d
13 (Tex. App.–Houston [14th Dist.] 1998), rev’d on other grounds, 6
S.W.3d 530 (Tex. Crim. App. 1999), did not object to the conditions of his
probation at trial, but complained about them for the first time on direct
appeal.  The court of appeals rejected
the State’s contention that the appellant had failed to preserve his complaint
by making a trial objection and held that the appellant could raise “a defect
in his sentence” even though he had not objected to it at trial.  Id. at 15.  The court of appeals opinion was based on a
line of cases holding that if a punishment is not authorized by law, that
portion of the sentence imposing that punishment is void.  See, e.g., Hern v. State,
892 S.W.2d 894, 896 (Tex. Crim. App. 1994). 
However, on appeal to the court of criminal appeals, that court
concluded that, although the grant of community supervision and its
accompanying conditions are part of the judgment, they are not part of the
sentence.  Speth v. State,
6 S.W.3d 530, 532 (Tex. Crim. App. 1999). 
The court of criminal appeals held that “an award of community
supervision is not a right, but a contractual privilege, and the conditions
thereof are terms of the contract entered into between the trial court and the
defendant.  Therefore, conditions not objected
to are affirmatively accepted as terms of the contract.”  Id. at 534.  The court concluded that, assuming the
probationer knew what the conditions were in time to object at trial, “[a]
defendant who benefits from the contractual privilege of probation, the
granting of which does not involve a systemic right or prohibition, must
complain at trial to conditions he finds objectionable.”  Id.

            In the recent case of Kesaria v. State,
PD-1803, PD-1804, 2006 Tex. Crim. App. LEXIS 680, at *5 (Tex. Crim. App. April
5, 2006),  the court of criminal appeals
cited Speth and reiterated the necessity of an objection in order
to preserve a complaint regarding conditions of probation.  The court, however, determined that the
record indicated the probationer had not had an opportunity to object and
reviewed the appellant’s complaint.  Id.,
at *9-10.

            The record in the instant case shows that Appellant had
the opportunity to object in the trial court, but failed to do so.  No error is preserved.  Therefore, we do not address Appellant’s
argument that the specific provisions of Article 62.045 regarding notice of a
probationer’s sexual offender status preempt the general provisions set out in
Article 42.12, Section 11(a)(23). 
Appellant’s second issue is overruled.

 

Disposition

            The judgment of the trial court is affirmed.

 

 

                                                                                                    BILL BASS 
  

                                                                                                            Justice

 

 

Opinion
delivered May 10, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and Bass, Retired Justice, Twelfth
Court of Appeals, Tyler, sitting by assignment.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)