John Brucewayne OVEAL, Appellant

v.

The STATE of Texas, Appellee.

No. 14–02–01089–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 10, 2005.

Danny K. Easterling, Houston, for appellants.

Alan Curry, Houston, for appellees.

Panel consists of Justices EDELMAN, FROST, and SEYMORE.

## PLURALITY OPINION

CHARLES W. SEYMORE, Justice.

The substitute opinion of March 10, 2005, is withdrawn and the court issues this substitute plurality opinion and concurring opinion.

A jury convicted appellant, John Brucewayne Oveal, of burglary of a habitation with intent to commit aggravated assault. In four issues, appellant contends the trial court erred by (1) admitting absent complainant's "excited utterances" to her aunt and the investigating officer, (2) excluding absent complainant's handwritten document claiming someone other than appellant assaulted her, and (3) excluding the notes of an assistant district attorney. We affirm.

## I. FACTUAL BACKGROUND

Complainant, Tiffany Landers, resides outside of Texas and did not testify at trial. Therefore, the pertinent facts of this case were admitted into evidence through testimony of Landers's aunt, Theresa Griffin; Landers's cousin, Anikka Gray; and Houston Police Officer Charles Webb. On the afternoon of May 22, 2002, Landers telephoned Griffin from the apartment where they both lived. During this conversation, Griffin heard loud banging noises, as though someone was beating down a door. She also heard objects being thrown around and appellant's voice threatening Landers that he would harm her if he ever caught her with someone else.[1]

Griffin's daughter, Anikka, arrived at the apartment after school. She was unable to enter the apartment with her key because the deadbolt was locked. Anikka saw appellant climbing out of an open bedroom window, and then Landers unlocked the door to let her in. Appellant later returned and demanded that Landers meet him outside. Anikka saw appellant slap Landers's face. Immediately thereafter, Anikka called Griffin and told her what had happened. Griffin instructed Annika to leave the apartment and go to her aunt's home. Anikka obliged.

Officer Webb and Griffin both spoke to Landers after the assault. At trial, they

1. Appellant and Landers were in a troubled relationship that ended approximately one week before the burglary.

recounted Landers's description of the incident. Appellant entered the apartment through the bedroom window, and Landers ran and hid in a closet. Appellant kicked down a bedroom door, and when he found Landers, he grabbed her by her hair, pulled her out of the closet, and started beating and kicking her. He pulled a mattress on top of her and jumped on it repeatedly. He then pulled her into the bathroom where he beat her, used a pair of scissors to cut her hair out, and threw her into the wall. After dragging her into the living room, he retrieved a knife from the kitchen. He threatened to kill her, and then jammed the knife into the wall. He also pushed the clothes dryer down, threw clothes and a radio onto the floor, and hit her on the head several times with a broom handle. The jury found appellant guilty of burglary of a habitation with intent to commit aggravated assault and sentenced him to twelve years' confinement.

## II. EXCITED UTTERANCES

■ In his first and second issues, appellant contends that the trial court erred in allowing Griffin and Officer Webb to testify over his hearsay objections regarding Landers's statements about the

incident.[2] The trial court admitted the testimony on the ground that Landers's statements were excited utterances, a hearsay exception. *See* TEX.R. EVID. 803(2). Whether an out-of-court statement is admissible under an exception to the general hearsay exclusion rule is a matter within the trial court's discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim. App.2003). Our role is limited to determining whether the record supports the trial court's ruling. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994). Therefore, we must reverse only when "the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Zuliani*, 97 S.W.3d at 595 (quoting *Cantu v. State*, 842 S.W.2d 667, 682 (Tex.Crim. App.1992)).

■ The excited utterance exception to the hearsay rule is founded on the belief that a statement made as a result of a startling event or condition is involuntary and does not allow the declarant an adequate opportunity to fabricate, thereby ensuring the trustworthiness of the statement. *Couchman v. State*, 3 S.W.3d 155, 159 (Tex.App.-Fort Worth 1999, pet ref'd).

2. In a post-submission memorandum, appellant also argues that Landers's out-of-court statements to Officer Webb should have been excluded under the Sixth Amendment's Confrontation Clause. Although appellant failed to raise a trial objection on confrontation grounds, he contends that we should consider the issue in light of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), decided after submission of this case. *Crawford* held that out-of-court testimonial statements by a witness, who fails to testify at trial, are barred by the Confrontation Clause unless the witness is unavailable to testify and the accused had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable under the rules of evidence. *Id.* at 1369–74. Although *Crawford* clarified the law with re-

spect to the Confrontation Clause and the admissibility of out-of-court "testimonial" statements under the rules of evidence, "the federal constitutional right to confront one's accuser's is neither new nor novel." *Bunton v. State*, 136 S.W.3d 355, 369 (Tex.App.-Austin 2004, pet filed). Accordingly, by failing to object on Confrontation Clause grounds, appellant failed to preserve this issue for review. *See* Tex. R.APP. P. 33.1(a); *Bunton*, 136 S.W.3d at 369 (holding appellant waived Confrontation Clause complaint by failing to object at trial and rejecting suggestion that because *Crawford* established a new constitutional rule, an objection would have been futile); *Crawford v. State*, 139 S.W.3d 462, 464 (Tex.App.-Dallas 2004, no pet.) (approving of *Bunton* ).

In other words, the statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event. *Zuliani*, 97 S.W.3d at 595. To determine whether a statement qualifies as an excited utterance, (1) the statement must be the product of a startling occurrence, (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence, and (3) the statement must be related to the circumstances of the startling occurrence. *Sellers v. State*, 588 S.W.2d 915, 918 (Tex.Crim.App. [Pan. Op.] 1979). *Couchman*, 3 S.W.3d at 159. Factors the court may consider to determine whether a statement qualifies as an excited utterance are the lapse of time between the event and declaration, and whether the statement is made in response to a question. *Lawton v. State*, 913 S.W.2d 542, 553 (Tex.Crim.App.1995). However, these factors are not dispositive. *Id.* The critical factor is whether the emotions, excitement, fear, or pain of the event still dominated the declarant at the time of the statement. *Zuliani*, 97 S.W.3d at 596. If the statement is made while the declarant is still in the grip of emotion, excitement, fear, or pain and the statement relates to the exciting event, it is admissible even after an appreciable amount of time has elapsed. *Penry v. State*, 691 S.W.2d 636, 647 (Tex. Crim.App.1985); *Jones v. State*, 772 S.W.2d 551, 555 (Tex.App.-Dallas 1989, writ ref'd).

### A. Statements to Officer Webb

■■■ Appellant contends that Landers's statements to Officer Webb were not excited utterances. Officer Webb testified that when he arrived at Landers's apartment in response to an "assault in progress" call, Landers was alone. Officer Webb testified that Landers told him she had talked to her aunt, but he did not know if Landers had called her after the assault, and he provided no details about the conversation. Additionally, although Officer Webb did not know the exact time of the assault, he believes he arrived shortly (less than two hours) after the occurrence. Appellant claims Landers's statements to Officer Webb were not excited utterances because Landers had already talked to Griffin and Annika about the incident, and one to three hours had passed since the assault occurred. However, Officer Webb was the first witness to testify at trial. Because the facts appellant claims factor against admissibility were not in evidence at the time Officer Webb testified, we cannot consider them. *See Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App.2002) (noting that a reviewing court should review a trial court's ruling on admission of evidence in light of the evidence before the trial court at the time it made its ruling).

Appellant also contends that Landers's statements to Officer Webb were not excited utterances because (1) Landers's statements were solely in response to Officer Webb's questions, and Landers gave a detailed account about the assault, and (2) Officer Webb testified Landers was not excited and only "somewhat" stressed. We recognize that a court should consider whether hearsay statements were made in response to questions when determining whether the statements qualify as excited utterances. *See Zuliani*, 97 S.W.3d at 595–96. However, this factor is not dispositive; it is only one factor to be considered. *Id.* at 596 (holding responses to questions qualified as excited utterances). As previously mentioned, the critical factor is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event. *Zuliani*, 97 S.W.3d at 596. In this case, when Officer Webb arrived at Landers's apartment, he observed that her face was swollen, and she

had cuts on her arm, lip, and leg, and blood on her shirt and arm. When Officer Webb spoke with Landers, she was still in her ransacked apartment where she had recently been the victim of a violent assault. Although Officer Webb did state that Landers was not excited and she was "somewhat stressed," he further stated that Landers was quiet, in a frightened state of mind, upset, and her eyes were watering, and that she made the statements while she was under the stress or excitement caused by the event. Further, Officer Webb had observed Landers's demeanor in the past, when he had seen Landers in the neighborhood, and could tell that Landers was frightened at the time she spoke with him.

Based on the evidence in the record, the trial court could have reasonably concluded that Landers's statements to Officer Webb related to a "startling event or condition," that event being the assault she recently experienced, and that Landers was still under the physical and emotional "stress of the excitement caused by the event or condition" when she made the statements to Officer Webb. The trial court's decision was within the "zone of reasonable disagreement," and therefore, we find that the trial court did not abuse its discretion by admitting Officer Webb's testimony.

**B. Statements to Griffin**

■■■■ Appellant contends that Landers's statements to Griffin were not excited utterances. Appellant claims no evidence was presented that Landers was dominated by the emotions, excitement, fear, or pain of the event when she made the statements to Griffin. Appellant further avers that Landers talked to Annika about the incident before talking to Griffin, one to two hours passed between the assault and the time Landers spoke to her

aunt, and Landers did not make any spontaneous statements to Griffin. When Griffin testified, no evidence had been admitted that Landers talked to Annika about the incident before talking to Griffin. Because that evidence was not before the trial court at the time of its ruling, we may not consider it. See Willover v. State, 70 S.W.3d 841, 845 (Tex.Crim.App.2002) (noting that a reviewing court should review a trial court's ruling on admission of evidence in light of the evidence before the trial court at the time it made its ruling). Additionally, there is no evidence to support appellant's assertion that Landers did not make spontaneous statements to Griffin. Griffin testified about what Landers told her; she gave no indication Landers was responding to questions.

■■■■ Although Landers's statements to Griffin were made one to two hours after Landers had been assaulted, the period of time separating the startling event and the statement is only one factor to consider when determining if a statement was an excited utterance. Zuliani, 97 S.W.3d at 596. Griffin testified that she arrived at the apartment before Officer Webb. Landers was lying on the couch crying, she looked scared, and she "seemed kind of out of it." Griffin further testified that Landers appeared to be suffering under the stress or excitement caused by the event. Evidence had already been presented through Officer Webb that Landers had visible injuries and the apartment was ransacked. Based on this testimony, we find the trial court did not abuse its discretion in finding Landers's statements admissible because she was still dominated by the emotions, excitement, fear, or pain of the event. See id.

We overrule appellant's first and second issue.

### III. EXCLUSION OF HANDWRITTEN DOCUMENT

In his third issue, appellant contends the trial court erred in refusing to admit a handwritten document as impeachment evidence.[3] We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378–79 (Tex. Crim.App.1990) (op. on reh'g). We must review the trial court's ruling in light of the arguments, information, and evidence that was before the trial court at the time the ruling was made. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex.Crim.App.2003). We must uphold the trial court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex.Crim.App. 2000).

Appellant offered the following handwritten document as evidence:

My name is Tiffany Michelle Landers and I am 18 yrs old[.] I was born on 1–28–84[.] I would like to tell whoever this may concern what happen on May 22 of 02'[.] Everything that I told the W. Mongemery [sic] police was true except the part about who did it to me[.] James Lawson better known as JR—is the guy who did this to me. He told me if I "Gave them got damn people his name he would hurt me." And he told

me to give John [sic] name "since he the cause of this shit." Being as scared as I was I did what he told me and Mrs. Thressa [sic] Griffin (my aunt) didn't like him from the start so of course she would believe me. /s/ Tiffany Landers. Sworn to and subscribed to before me this 23 day of September 2002 /s/ Russell Timmies, Notary Public[4]

When appellant offered the document at trial, the State objected on hearsay grounds, and the trial court sustained the objection. Appellant then informed the trial court that "this is offered as impeachment."[5] However, the record reflects that appellant failed to cite any specific rule of evidence or argue why the statement constituted impeachment evidence.

The proponent of an out-of-court statement, not the trial court, is required to specify which exception to the hearsay rule he is relying upon or to specify how the evidence is not hearsay. *Willover*, 70 S.W.3d at 845–46. The proponent " 'must at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule [or statute] in question and its precise and proper application to the evidence in question.' " *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim.App.2002) (quoting 1 Stephen Goode, Et Al., TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 103.2, at 14 (2d ed.1993)).

---

3. Appellant also claims the document was admissible because it contained statements against interest. *See* TEX.R. EVID. 803(24). However, he did not make this complaint at trial, so we will not consider it on appeal. *See* TEX.R.APP. P. 33.1.

4. Appellant's sister testified that she was familiar with Landers's printing and signature, and she recognized the printing and signature in the document as Landers's. *See* TEX.R. EVID. 901(b)(2).

5. After a hearsay statement has been admitted, the declarant's credibility may be at-

tacked and if attacked, may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness. TEX.R. EVID. 806. Because Landers was the declarant of hearsay statements admitted through Griffin and Officer Webb, appellant was entitled to impeach her credibility as if she had given live testimony. *See Bee v. State*, 974 S.W.2d 184, 190 (Tex.App.-San Antonio 1998, no pet.); *Appling v. State*, 904 S.W.2d 912, 916 (Tex.App.-Corpus Christi 1995, pet. ref'd).

On appeal, appellant presents two arguments for the admissibility of the statement to impeach Landers. He first contends that the entire statement was admissible to impeach Landers as a prior inconsistent statement under Texas Rule of Evidence 613(a). *See* Tex.R. Evid. 613(a). He also claims the entire statement was admissible to impeach Landers under Texas Rule of Evidence 613(b) because it contains evidence of Landers's motive, bias and interest for telling Griffin and Webb that appellant committed the offense. *See* Tex.R. Evid. 613(b).

The trial court reasonably could have determined that appellant was offering the entire statement as a prior inconsistent statement under Rule 613(a). Because only *Landers's* prior inconsistent statements can be used to impeach her under Rule 613(a), the trial court reasonably could have concluded that the statements in the document attributed to James Lawson were inadmissible, and thus excluded the entire document. *See Willover,* 70 S.W.3d at 846–47 (holding that when offered evidence contains admissible and inadmissible portions, the trial court may properly exclude the entire item of evidence).

To the extent the trial court determined that appellant was offering the entire document under Rule 613(b) as evidence of Landers's bias or motive, several of the statements do not have any tendency to show Landers's bias or motive. Therefore, the trial court reasonably could have determined that these statements were inadmissible, and thus excluded the entire document. *See Willover,* 70 S.W.3d at 846–47.

Accordingly, the trial court did not abuse its discretion in excluding this evidence. We overrule appellant's third issue.

## IV. EXCLUSION OF PROSECUTOR'S NOTES

In his fourth issue, appellant claims the trial court erred in excluding a handwritten note allegedly written by Andrea Kolski, an assistant district attorney. According to what is purported to be Kolski's note, included in the State's case file, Landers told Kolski that appellant was not the person who committed the assault. Appellant claims the note was admissible as impeachment evidence and as a statement against interest. *See* Tex.R. Evid. 613; Tex.R. Evid. 803(24).

However, appellant did not offer the note as evidence at trial. Instead, he submitted it as an offer of proof to support his claim that he should have been allowed to call the prosecutor as a witness. When making the offer of proof, he submitted the note to show what Kolski would have testified to. Because appellant did not offer the note as evidence at trial, he has failed to preserve this issue for appeal. *See* Tex.R.App. P. 33.1(a)(1)(A). Accordingly, we overrule appellant's fourth issue.

Having overruled appellant's issues, the judgment of the trial court is affirmed.

FROST, J., concurring.

EDELMAN, J., concurs in result only.

KEM THOMPSON FROST, Justice, concurring.

Today the court tests the limits of the excited-utterance exception to the hearsay rule in deciding whether a "not excited" complainant's statements, made during a post-assault police interview and after she already had given an account of the same event to another witness, can fairly be characterized as excited utterances within the meaning of Texas Rule of Evidence 803(2). The plurality concludes that the statements in question, admitted through Officer Charles Webb's testimony, qualify

under this hearsay exception. Because the record supports the opposite conclusion, I respectfully decline to join the plurality's analysis of appellant's second issue. However, because the trial court's admission of this hearsay evidence was harmless error, the judgment nonetheless should be affirmed. Therefore, I respectfully concur in the court's judgment.

An excited utterance is a statement that relates to a startling event or condition and that is made while the declarant is under the stress of excitement caused by the event or condition. Tex.R. Evid. 803(2). The basis for the excited-utterance exception to the hearsay exclusionary rule is "a psychological one, namely, ... that when [one] is in the instant grip of violent emotion, excitement or pain, he ordinarily loses the capacity for reflection necessary to the fabrication of a falsehood and the 'truth will come out.'" Zuliani v. State, 97 S.W.3d 589, 595 (Tex.Crim.App. 2003) (quoting Evans v. State, 480 S.W.2d 387, 389 (Tex.Crim.App.1972)). In the words of the Court of Criminal Appeals, "the statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event." Id. The hallmark of an excited utterance is spontaneity, a quality that is produced from a momentary impulse. A spontaneous utterance is one that springs forth naturally, without deliberation. It is the product of reactive rather than reflective thinking. Thus, an important consideration in evaluating testimony under the excited-utterance exception is whether the declarant had the ability to reflect and fabricate. See Drayton v. State, 138 Tex.Crim. 264, 135 S.W.2d 703, 704 (1940) (op. on reh'g); Hughes v. State, 128 S.W.3d 247, 253–54 (Tex.App.-Tyler 2003, pet. ref'd). The underlying rationale for this principle is that a statement made contemporaneously with, or shortly after, a startling event provides a higher degree of reliability. By the same logic, a statement made in response to an inquiry (i.e., one that requires reflection) or a statement made some time after the event (i.e., one made after opportunity for reflection), provides a comparatively lower degree of reliability. The passage of time is highly relevant, but not dispositive, in determining whether a statement falls within the excited-utterance exception.

The Court of Criminal Appeals set the presumed outer boundaries of the excited-utterance exception to the hearsay rule in Zuliani, a case in which it found that a statement made twenty hours after an altercation, in response to a question, and after the declarant appeared to be thinking about her answer, was nonetheless an excited utterance. In its analysis, the Zuliani court noted that the declarant was "withdrawn, with her head down 'like a two-year old,' scared to death, or 'real scared,' and tired." See Zuliani, 97 S.W.3d at 596. Although the interval between the startling event and the statements was lengthy and some of the declarant's statements were made in response to questions, the Zuliani court found the statements still fell within the excited-utterance exception. See id. at 595–96. In reaching its conclusion, the court noted that the declarant, who was "scared to death," had not received medical treatment for her injuries (a lacerated scalp that required stitches) and had not been separated from the defendant since the incident occurred. See id. at 596. These factors appear to be central to the court's holding because they impacted the declarant's ability to reflect and to fashion a response. See id. (quotation omitted). The facts presented by our record are different in significant respects.

When Officer Webb arrived at the apartment, Landers's attacker already had left the scene; the attacker did not remain

with Landers after the incident. Moreover, in the two-to three-hour period between the time the attacker fled and the time the police arrived, Landers talked to her aunt, Theresa Griffin, about the afternoon's events.[1] By the time Webb arrived, Landers was not excited. She was not crying and did not need to be calmed down. She gave her statements in the context of a police interview, answering questions the officer propounded.

In evaluating whether a statement qualifies as an excited utterance, the critical determination is "whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event or condition at the time of the statement." *Zuliani*, 97 S.W.3d at 596. It is not enough to merely experience stress or feel afraid; the declarant's emotions must be so forceful that they dominate her mind so as to render her incapable of reflective thought. *See id.* An evidentiary basis exists to support a finding that, at the time Landers answered Webb's interview questions, Landers was afraid, and perhaps upset. However, the record does not indicate Landers was dominated by those emotions or that she was in "the instant grip of violent emotion, excitement or pain." *See id.* at 595. Nor does the record indicate Landers's statements were made at a time so near the startling event as to preclude any possibility of deliberate

design or fabrication in her responses to Webb's inquiries. Tellingly, Landers's statements to Webb were not her first account of the startling event. *See Drayton*, 135 S.W.2d at 704; *Hughes*, 128 S.W.3d at 252–53. Given that she already had recounted the same event to her aunt, Landers's statements to Webb could hardly be characterized as spontaneous. Likewise, though Landers appeared to be "somewhat" under stress, there is no evidence to suggest she was incapable of reflection or fabrication or that she was speaking without deliberation during the interview. In fact, when she spoke, she was responding to interview questions, not making spontaneous utterances. The questions—not the startling event—triggered her statements. It is not reasonable to conclude that Landers's statements to Webb, in effect, were "the event speaking through" Landers, and not Landers talking about the event. *See Zuliani*, 97 S.W.3d at 595.

Landers's statements in response to Webb's questions lack the requisite indicia of reliability to be admissible under the excited-utterance exception to the hearsay rule. *See Hughes*, 128 S.W.3d at 252–53. On this record, the trial court erred in determining that the State satisfied its burden of showing that Landers's statements to Webb were excited utterances. *See Martinez v. State*, 993 S.W.2d

---

1. After the trial court initially sustained appellant's hearsay objection, the prosecutor attempted to lay a better predicate. The trial court later overruled the objection, but then in response to defense counsel's repeated renewals of the hearsay objection, the trial court allowed defense counsel to take Webb on voir dire. When defense counsel again renewed the hearsay objection, stating that the declarant was not under the stress of the exciting situation at the time the statements were made, the trial court stated:

Counsel, I'm not sure at what point he's still talking to her. And if you both want to

clarify that, it's part of the excited utterance. Why don't you both approach and let me talk to you for just a second.

After the bench conference, the trial court informed the lawyers that it would permit both of them to conduct further questioning to find out if the testimony fell within the exception. When defense counsel questioned Webb again, Webb admitted that during his investigation, Landers told him that she already had talked to Griffin. The court ultimately overruled the hearsay objection and permitted Webb to testify about what Landers said in the interview.

751, 758 (Tex.Crim.App.1999) (stating that if State is offering the evidence, then it has the burden of establishing that the proffered hearsay is admissible under an exception to the hearsay rule); *Drayton,* 135 S.W.2d at 704 (holding that it is error to admit statement as excited utterance when statement lacked requisite degree of spontaneity and when declarant had previously related the events in question to other parties); *Hughes,* 128 S.W.3d at 252–53 (holding that trial court erred in admitting statements as excited utterances because the statements were narrations in response to police interrogation and it was not possible to conclude that the statements were made without opportunity for reflection or deliberation). Because the statements were not excited utterances, the trial court should have sustained the defense's hearsay objections.

The improper admission of Webb's testimony concerning Landers's statements is governed by the harm analysis applicable to non-constitutional error. *See* Tex. R.App. P. 44.2(b). Thus, the judgment should be overturned if, after examining the record as a whole, the reviewing court has "grave doubt" that the error did not affect the outcome. *Webb v. State,* 36 S.W.3d 164, 182 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (en banc). If the error had no influence or only a slight influence on the verdict, it is harmless. *Id.* If the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict. *Id.*

Although Landers did not testify at trial, two witnesses other than Webb gave admissible testimony implicating appellant in the assault. Landers's young cousin, Anikka Gray, testified that upon returning home from school, she saw appellant leave the apartment through an open bedroom window and run down the stairs. According to the youngster's testimony, before either Griffin or Webb arrived, appellant returned to the scene, and Gray saw him strike Landers. Likewise, Griffin testified that while she was still at work and speaking to Landers on the telephone, she could hear what was happening at the apartment. Griffin, who left her workplace to go to Landers's aid, also testified as to Landers's at-the-scene account of what transpired with appellant at the apartment.[2] Because Webb's testimony was cumulative of Griffin's testimony, and because there was also eyewitness testimony from Gray that implicated appellant in the assault on Landers, a reasonable evaluation of the record gives fair assurance that the error did not influence the jury's verdict or had but a slight effect on the outcome. *See Liggens v. State,* 50 S.W.3d 657, 662 (Tex.App.-Fort Worth 2001, pet. ref'd) (holding that, even if admission of testimony as excited utterance were error, it would not be reversible error because testimony was cumulative of other evidence). Therefore, the erroneous admission of Landers's hearsay statements through Webb was not harmful. For this reason, this court is correct to overrule appellant's second issue.

**2.** Unlike Webb's account, Griffin's statements about what Landers said immediately following the incident were admissible as excited utterances. At the time Landers spoke to Griffin, she was visibly upset and crying. Though an hour had passed, the record shows

Landers was still dominated by the excitement, pain, and stress of the assault. Her statements to Griffin were spontaneous, and measured against the applicable factors, qualified as excited utterances under Rule 803(2). *See Zuliani,* 97 S.W.3d at 595–96.