Affirmed; Opinion of April 27, 2006 Withdrawn and Corrected Memorandum
Opinion filed May 16, 2006









Affirmed; Opinion of April
27, 2006  Withdrawn and Corrected
Memorandum Opinion filed May 16, 2006.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-04-00770-CR

_______________

 

JEFFREY AARON REYES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause No. 892,494

                                                                                                                                               


 

C O R R E C T E D   M E
M O R A N D U M   O P I N I O N

We withdraw our opinion of April 27, 2006 and issue this
corrected memorandum opinion in its place.

A jury convicted appellant, Jeffrey Aaron Reyes, of murder
and sentenced him to sixty years= confinement.  In seven issues, appellant contends the trial
court erred with respect to several evidentiary rulings and he received
ineffective assistance of counsel. 
Because all dispositive issues are clearly settled in law, we issue this
memorandum opinion and affirm.  See Tex. R. App. P. 47.4. 








I. 
Background

Appellant and the complainant, Carlos Martinez, were former
high-school classmates.  In October 2001,
Savannah Kowalski, appellant=s girlfriend and the mother of his child, left him and began
staying with Carlos=s family.  On October
30, 2001, appellant persistently called Katherine Vick, Savannah=s friend, until Katherine admitted
Savannah was staying with Carlos=s family.  That night, appellant approached Carlos=s house several times and spoke with
Rachel Martinez, Carlos=s mother.  Each time,
he asked for Carlos and was told he was not home.  Appellant does not dispute that after he left
the house the last time, he encountered Carlos on the street and shot him in
the face with a shotgun causing his death. 
However, appellant gave different versions of the shooting in his
written statement to the police shortly after the shooting and at trial.  

In his written statement, appellant admitted that he laid in
waiting for Carlos and shot him because he was mad, wanted Carlos dead, and
wanted to Aget back@ at Savannah.  In contrast, at trial, appellant
characterized the shooting as self-defense. 
He testified that  he was afraid
of Carlos because Carlos had constantly picked on him at school.  He went to Carlos=s house to look for Savannah and took
a gun for protection.  When he left the
house, he passed Carlos on the street and hoped Carlos would not recognize him,
but Carlos turned and approached appellant, so he pulled the gun out.  Carlos raised his hand as if he planned to
take the gun away, so appellant fired at his head.  Appellant claimed he made his contrary
statement to the police because he could not live with himself for killing
Carlos and made himself look as bad as possible to ensure he would get the
death penalty.

II. 
Evidentiary Rulings








In his first five issues, appellant challenges several of the
trial court=s evidentiary rulings.  We review a trial court=s decision to admit or exclude
evidence under an abuse of discretion standard. 
Torres v. State, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).  Unless the trial court=s ruling falls outside the zone of
reasonable disagreement, we will not disturb it.  Id.

A.        Carlos=s Character

In his first issue, appellant contends the trial court abused
its discretion by excluding evidence of Carlos=s character.  The trial court granted the State=s motion in limine precluding
appellant from mentioning that Carlos was on deferred adjudication for
possession of a controlled substance at the time of his death.  During appellant=s cross-examination of Rachel
Martinez, he asked about her previous testimony that she was suspicious of
appellant when he came to her house on the night of the murder:

Q.        Now, when you were talking to the Prosecutor, you said
[appellant] looked sort of odd because he was not the type of person who your
son hung around with

. . . 

A.        Yes

Q.        What type of people did your son hang out with?

A.        Nicer looking, better dressed.

Q.        Nice guys?

A.        Yes.

Q.        Because he was nice himself?

A.        Yes, he was, very nice.

Q.        People who don=t get in trouble?

The State then objected to Arelevance,@ and the trial court sustained the
objection.








Appellant contends that Rachel left a false impression
regarding Carlos=s criminal history, and thus, pursuant to Prescott v.
State, Aopened the door@ to an inquiry into his criminal
history.  In Prescott, the Court
of Criminal Appeals recognized that generally a witness cannot be impeached by
a prior offense unless the offense resulted in a final conviction for either a
felony or a crime involving moral turpitude and the conviction is not too
remote in time.  Prescott v. State,
744 S.W.2d 128, 130 (Tex. Crim. App. 1988); see Tex. R. Evid. 609.  An
exception to this rule arises when a witness, including an accused, leaves a
false impression during direct examination as to the extent of her prior (1)
arrests, (2) convictions, (3) charges, or (4) Atrouble@ with the police.  See id. at 131.  When the witness leaves this kind of false
impression during her direct examination, she is deemed to have Aopened the door@ to an inquiry during
cross-examination into the veracity of her testimony.  See id.  That inquiry may include the witness=s past criminal history that would
otherwise have been irrelevant and inadmissible. See id.  

However, Prescott generally applies when a witness
leaves a false impression as to her own criminal history. See id.  Here, Rachel did not leave a false
impression as to her own criminal history. 
Appellant cites no authority applying Prescott when a witness
leaves a false impression regarding the victim=s criminal history. 
Therefore, even if Rachel=s testimony that Carlos was Avery nice@ could be considered a false
impression regarding his criminal history, her testimony did not invoke the Prescott
exception.  Accordingly, the trial court
did not abuse its discretion by excluding evidence regarding Carlos=s criminal history.  We overrule appellant=s first issue. 

B.        Statement by
Savannah Kowalski

In his second and third issues, appellant contends the trial
court violated his right to confrontation under the United States and Texas
constitutions by admitting testimony from Katherine Vick regarding a statement
by Savannah.  During the State=s direct examination, Katherine
testified as follows regarding a telephone call from Savannah after Carlos=s death:

Q.        How did she seem whenever she called you?  What was her reaction like? What was her
demeanor like?

A.        Hysterical, blaming me.

Q.        How did you feel?

A.        Upset








Q.        Did she tell you that - - 

[DEFENSE COUNSEL]: I=m going
to object to hearsay, Your Honor

THE COURT: Sustained 

Q.        Did she seem to still be excited about something that had
just happened?

A.        Yes

Q.        And was she - - you said she was hysterical.  Was her hysteria, did it seem to be as a
result of what had just happened?

[DEFENSE COUNSEL]: Your Honor, I would object that she
can=t testify to that.

THE COURT: Overruled. 
You may answer the question, ma=am.

Q.        Did she seem to still be excited? Whatever she was saying,
was it about an event that had just happened?

A.        Yes.

Q.        Did she still seem to be under the influence of excitement of
that event?

A.        Yes.

Q.        And what was it that she said to you?

A.        She said, AJeffrey shot Carlos.  Why did you tell? Why? Why? Why?@ Kept crying, kept crying.








Although appellant cites this entire dialogue, he apparently
complains about admission of Savannah=s statement at the end of this
exchange.  However, appellant did not
preserve error because he did not timely object.  See Tex.
R. App. P. 33.1(a).  Earlier
during this testimony, appellant objected to a question regarding a statement
by Savannah as hearsay, and the trial court sustained the objection.  When the State later asked again what
Savannah said, appellant did not object. 
To preserve error, a party must object each time inadmissible evidence
is offered unless he (1) obtains a running objection, or (2) makes an objection
outside the presence of the jury to all the testimony he deems
objectionable.  Martinez v. State,
98 S.W.3d 189, 193 (Tex. Crim. App. 2003); 
Ross v. State, 154 S.W.3d 804, 811 (Tex. App.CHouston [14th Dist.] 2004, pet. ref=d); see Tex. R. Evid. 103(a)(1).  Appellant did not obtain a running objection
to statements by Savannah or make an objection outside the jury=s presence.  Consequently, his earlier objection did not
preserve error as to Savannah=s later statement.

 Further, even if the
earlier objection could be construed as timely with respect to Savannah=s later statement, appellant still
failed to preserve error because the objection did not comport with the
complaint on appeal.  See Guevara,
97 S.W.3d 579, 583 (Tex. Crim. App. 2003) (recognizing that objection at trial
must comport with complaint on appeal to preserve error).  Appellant made a hearsay objection at trial
but argues on appeal that admission of Savannah=s statement violated the
confrontation clauses.  A defendant
waives a complaint that admission of a statement violated the confrontation
clauses if he does not object on that ground at trial.  See Oveal v. State, 164 S.W.3d 735,
739 n.2 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d); Bunton v. State, 136
S.W.3d 355, 369 (Tex. App.CAustin 2004, pet. ref=d). 
Moreover, a hearsay objection does not preserve error on a confrontation
clause complaint.  See Oveal, 164
S.W.3d at 739 n.2; Bunton, 136 S.W.3d at 368B69. 
Accordingly, because appellant has waived his complaint, we overrule his
second and third issues.

C.        Threats to
Appellant








In his fourth issue, appellant contends that the trial court
erred by excluding evidence of threats he received while in custody during the
month before trial.  Appellant does not
dispute that he fled to Mexico over a year before trial while he was free on bond.  He was subsequently arrested in Mexico and
returned to custody before trial.  At
trial, appellant claimed that he fled to Mexico because he and his family had
been threatened, and he presented evidence of threats made before he fled.[1]  However, in response to the State=s relevancy objection, the trial
court ruled appellant could not testify, or otherwise present evidence, that he
received threatening letters while in custody during the month before trial.

Appellant contends the threats while he was in custody were
relevant to rebut the State=s argument that his early flight to Mexico indicated Aconsciousness of guilt.@ 
According to appellant, the threats while he was in custody demonstrate
that the earlier threats before he fled were Avery real.@ 
ARelevant evidence@ means evidence having any tendency
to make the existence of any fact that is of consequence to the determination
of the action more probable or less probable than it would be without the
evidence.  Tex. R. Evid. 401. 
Here, the fact Aof consequence@ at trial was not how serious the
earlier threats were but whether appellant fled because he felt
threatened.  Therefore, the earlier
threats were relevant to support appellant=s claim that he fled because he felt
threatened.  However, the trial court did
not abuse its discretion by determining that alleged threats made more than a
year after appellant fled were not relevant to his state of mind at the time he
fled.  Appellant=s fourth issue is overruled.

D.        Autopsy
Photographs








In his fifth issue, appellant contends that six autopsy
photographs of Carlos=s body, Exhibits 31-36, were inadmissible pursuant to Texas
Rule of Evidence 403.[2]  Although relevant, evidence may be excluded
if its probative value is substantially outweighed by the danger of unfair
prejudice, confusion of the issues, or misleading the jury, or by
considerations of undue delay, or needless presentation of cumulative
evidence.  Tex. R. Evid. 403. 
Appellant contends that any relevance of the photographs was
substantially outweighed by the danger of unfair prejudice and that several of
the photographs were Acumulative.@

1.         Unfair
Prejudice

When determining whether the relevance of photographs is
substantially outweighed by the danger of unfair prejudice, we consider the
number of photographs, the size, whether they are in color or are black and
white, whether they are gruesome, whether any bodies are clothed or naked, and
whether the body has been altered by autopsy. 
Hayes v. State, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002).  In addition, autopsy photographs are
generally admissible unless they depict mutilation of the victim caused by the
autopsy itself.  Id. at 816.
Moreover, when photographs will help the jury to understand verbal testimony,
such as the technical language used by a medical doctor in describing a crime
victim=s injuries, a trial court does not
abuse his discretion by admitting the photographs.  Harris v. State, 661 S.W.2d 106, 107
(Tex. Crim. App. 1983).








Here, there are only six photographs at issue.  One photograph is an x-ray image showing the
pellets lodged in Carlos=s skull.  The other
photographs show the front of Carlos=s body from various
perspectives.  They range from close-ups
of the shotgun wound to his face to more distant views of his face, torso, and
abdomen.  Of the two photographs that show
the entire face, torso, and abdomen, one photograph shows Carlos unclothed, and
the other shows him clothed with medical-intervention equipment still in
place.  The photographs are small
snapshots, and only black and white copies are included in the appellate record.[3]  The photographs were taken before the autopsy
began and thus, do not show any alteration to the body resulting from the
autopsy.  The photographs were admitted
during the medical examiner=s testimony and assisted her in describing the location and
nature of the wound and the condition of Carlos=s body.  Finally, the photographs are not overly
gruesome.  The shotgun wound is a round
defect on Carlos=s left cheek, but the rest of his face is intact.  Nonetheless, to the extent the photographs
are gruesome because they show the wound, they are no more gruesome than the
facts of the offense itself.  See Sonnier
v. State, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) (recognizing trial
court does not err merely by admitting gruesome photographs when the
gruesomeness Aemanates from nothing more than what
the defendant has himself done.@).  After considering
the appropriate factors, we conclude the trial court did not abuse its
discretion by finding the relevance of the photographs was not substantially
outweighed by the danger of unfair prejudice.

2.         ACumulative@ Objection

Appellant also contends that several of these photographs,
Exhibits 31, 33, and 35, were inadmissible pursuant to Rule 403 because they
were cumulative in light of another photograph, Exhibit 32.  Appellant contends the State could have used
only Exhibit 32 to show attributes of the shotgun wound because all the other
photographs also show the wound. 
However, Rule 403 does not prohibit cumulative evidence; rather it
requires exclusion if the probative value is substantially outweighed by the Aneedless presentation@ of cumulative evidence.  See Tex.
R. Evid. 403.  Although all of
these photographs depict the wound, they depict different views of the body and
the wound and were introduced for different purposes:

!                  
Exhibit 31 shows
the face, including the gunshot wound to the left cheek, and torso.  The medical examiner used this photograph to
point out the wound in general as a Arounded
defect.@

!                  
Exhibit 32 is a
close-up photograph of the gunshot wound. 
The medical examiner used this photograph to show Ascalloping,@ which
indicates the distance from which the gun was fired, and Asatelliting,@ which
means one pellet separated from the others and caused a mark.

!                  
Exhibit 33 is
also a close-up photograph of the face taken from a different angle.  This photograph partially shows the gunshot
wound and shows an abrasion on the right cheek. 
The medical examiner used it to point out the abrasion.








!                  
Exhibit
35 shows the face, torso, and abdomen. 
The medical examiner used this photograph to demonstrate that other than
the head area, there were no wounds except a tattoo on the right arm.

Because the photographs at issue depict different views of the body and
the wound and were introduced for different purposes, the trial court did not
abuse its discretion by determining they were not needlessly cumulative.  We overrule appellant=s fifth issue.

III. 
Ineffective Assistance of Counsel

In his sixth and seventh issues, appellant contends he
received ineffective assistance of counsel in violation of the Texas and United
States constitutions.  To prevail on an
ineffective assistance of counsel claim, an appellant must prove (1) counsel=s representation fell below the
objective standard of reasonableness, and (2) there is a reasonable probability
that, but for counsel=s deficiency, the result of the proceeding would have been
different.  Strickland v. Washington,
466 U.S. 668, 687 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999).  In considering an
ineffective assistance claim, we indulge a strong presumption that counsel=s actions fell within the wide range
of reasonable professional behavior and were motivated by sound trial
strategy.  See Strickland,
466 U.S. at 689 Thompson, 9 S.W.3d at 813B14; Jackson v. State, 877 S.W.
2d 768, 771 (Tex. Crim. App. 1994).  To
overcome this presumption, a claim of ineffective assistance must be firmly
demonstrated in the record.  Thompson,
9 S.W.3d at 814.  In most cases, direct
appeal is an inadequate vehicle for raising such a claim because the record is
generally undeveloped and cannot adequately reflect the motives behind trial
counsel=s actions.  See Rylander v. State, 101
S.W.3d 107, 110B11 (Tex. Crim. App. 2003); Thompson, 9 S.W.3d at 813B14. 
In the absence of a record explaining trial counsel=s actions, we should not find
deficient performance unless the challenged conduct was Aso outrageous that no competent
attorney would have engaged in it.@  Goodspeed v. State, No. PD‑1882‑03,
__ S.W.3d __, __, 2005 WL 766996, at *2 (Tex. Crim. App. Apr. 6, 2005); Jagaroo
v. State, 180 S.W.3d 793, 797 (Tex. App.CHouston [14th Dist.] 2005, pet.
filed).








Here, appellant=s ineffective assistance claim is
based on trial counsel=s failure to object to testimony of Houston Police Officer
George Guerrero.  When the State
cross-examined appellant regarding the threats that allegedly prompted his
flight to Mexico, he testified his family made multiple calls to the police to
report telephonic threats and the police came to their home at least four
times.  The State later called Officer
Guerrero as a rebuttal witness.  He explained
that police dispatch records show all complaints received by the police
department and all dispatches of officers in response to complaints.  He testified that the records for the
relevant time period reflected only one complaint from appellant=s home regarding telephone
harassment. 

Appellant contends that his trial counsel was ineffective for
failing to object to Officer Guerrero=s testimony as inadmissible under the
confrontation clauses of the United States and Texas constitutions.  However, other than generally stating that
the testimony violated the confrontation clauses, appellant offers no argument
or authority to show it violated the confrontation clauses.  To demonstrate that counsel was ineffective,
an appellant must identify the specific objection which should have been made
and provide authority in support of his argument that the objection would have
been meritorious.   Mallet v.
State, 9 S.W.3d 856, 867 (Tex. App.CFort Worth 2000, no pet.).  Accordingly, appellant has not demonstrated
that counsel was ineffective by failing to object to Officer Guerrero=s testimony as inadmissible under the
confrontation clauses. 








Appellant also contends that his trial counsel was
ineffective by failing to object to Officer Guerrero=s testimony as hearsay.  According to appellant, the testimony was
hearsay because Officer Guerrero was neither the custodian of the police
department records nor the officer who responded to the complaint.  However, even if Officer Guererro=s testimony constituted hearsay, the
record is silent regarding the reasons for trial counsel=s failure to object, and his failure
to object was not Aso outrageous that no competent attorney would have engaged
in it.@ 
Therefore, appellant has not overcome the strong presumption that his
trial counsel=s actions fell within the range of
reasonable professional behavior.  See
Goodspeed, __ S.W.3d __, 2005 WL 766996, at *2; Thompson, 9 S.W.3d
at 813B14.

Moreover, even if his counsel were deficient, appellant has
not shown there is a reasonable probability that, but for the deficiency, the
result of the proceeding would have been different.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Thompson, 9 S.W.3d at 812.  According to appellant, Officer Guerrero=s testimony impeached appellant=s testimony, eliminated his claim
that he fled to Mexico due to threats, and supported the State=s theory that his flight indicated Aconsciousness of guilt.@ 
However, by the time Officer Guerrero testified, the jury could have
reasonably questioned appellant=s credibility because it had already heard the discrepancies
between his statement to the police and his trial testimony.  Thus, even without Officer Guerrero=s testimony, the jury may have
reasonably doubted appellant=s claim that four threats were reported to the police.  Further, although Officer Guerrero=s testimony rebutted appellant=s claim that four threats were
reported to the police, his testimony actually supported appellant=s claim that the family received at
least one threat.  Consequently, Officer
Guerrero=s testimony did not necessarily
controvert appellant=s claim that he fled to Mexico due to threats.








Finally, even if the jury concluded the flight to Mexico
indicated Aconsciousness of guilt,@ the jury heard significant other
evidence that appellant murdered Carlos including appellant=s own statements.  In particular, in his written statement,
appellant admitted to the police that he laid in waiting for Carlos and shot
him because he was mad and wanted him dead. 
Moreover, after giving this statement, appellant saw Savannah at the
police station.  He became very agitated,
called her a Abitch,@ 
and said, AI told you you had better change your ways@ and AGood thing you weren=t there tonight, too, because I would
have killed you, too.@  In addition, when
appellant spoke with Katherine Vick before the shooting, he instructed her to
tell Savannah to take care of their child. 
The jury could have rationally inferred from this statement that
appellant planned to kill Carlos. 
Accordingly, appellant has not shown there is a reasonable probability
that the jury would have reached a different verdict but for Officer Guerrero=s testimony.  We overrule appellant=s sixth and seventh issues.

 

 

 

 

The judgment of the trial court is affirmed.

 

 

/s/        Charles W. Seymore

Justice

 

Judgment rendered
and Corrected Memorandum Opinion filed May 16, 2006.

Panel consists of
Justices Hudson, Frost, and Seymore.

Do Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  A friend
testified that once when he and appellant were walking down the street, someone
fired two shots towards them from a vehicle. 
Appellant=s mother testified that she received a telephone call
threatening her family, including appellant=s baby,
and she suspected that Rachel, Carlos=s
mother, made the call.  Appellant
testified that he was threatened via telephone by a Hispanic male and by
Rachel, he was threatened physically by a Hispanic male, and his son was
threatened.





[2]  Appellant also
suggests that another photograph, Exhibit 37, was improperly admitted.  However, Exhibit 37 is not a photograph of
Carlos=s body, but is a photograph of Carlos=s clothing after it was removed from his body.  Appellant focuses on the photographs of
Carlos=s body and offers no reason that Exhibit 37 was
improperly admitted under Rule 403. 
Consequently, he has waived any challenge to admission of Exhibit
37.  See Tex. R. App. P. 38.1(h) (requiring that brief contain
argument with appropriate citations to authorities); Cardenas v. State,
30 S.W.3d 384, 393 (Tex. Crim. App. 2000) (finding appellant waived appellate
review of issue by failing to include argument and authorities).





[3]  If appellant
believed the colors in the actual photographs would have affected our
assessment of prejudice, he should have ensured that the original photographs
or color photocopies were included in the record.  See Williams v. State, 958
S.W.2d 186, 196 n.10 (Tex. Crim. App. 1997).